

Search for Cases by: [ Select Search Method... ▾ ]

Judicial Links | eFiling | Help | Contact Us | Print          GrantedPublicAccess Logoff JCDICKINSON

**1522-CC11281 - DONNA SMITH V ASSET ACCEPTANCE LLC ET AL (E-CASE)**

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

Sort Date Entries: ● Descending   ○ Ascending          Display Options: [ All Entries ▾ ]

---

**01/13/2016**  ☐ **Notice of Service**
   Return of Service on Defendant Gary R. Underwood; Electronic Filing Certificate of Service.
      **Filed By:** BRYAN ETHAN BRODY
      **On Behalf Of:** DONNA SMITH
   ☐ **Summons Personally Served**
   Document ID - 15-SMCC-22124; Served To - UNDERWOOD, GARY R; Server - ; Served Date - 08-JAN-16; Served Time - 17:14:00; Service Type - Special Process Server; Reason Description - Served

**12/30/2015**  ☐ **Notice of Service**
   Affidavit of Service on Defendant Blitt & Gaines, P.C.; Electronic Filing Certificate of Service.
      **Filed By:** BRYAN ETHAN BRODY
      **On Behalf Of:** DONNA SMITH
   ☐ **Agent Served**
   Document ID - 15-SMCC-22125; Served To - BLITT & GAINES, P.C.; Server - ; Served Date - 28-DEC-15; Served Time - 11:01:00; Service Type - Special Process Server; Reason Description - Served

**12/23/2015**  ☐ **Jury Trial Scheduled**
      Scheduled For: 06/27/2016;  9:00 AM ;  BRYAN L HETTENBACH;  City of St. Louis
   ☐ **Notice of Service**
   Return of Service on Defendant Asset Acceptance, LLC; Electronic Filing Certificate of Service.
      **Filed By:** BRYAN ETHAN BRODY
      **On Behalf Of:** DONNA SMITH
   ☐ **Agent Served**
   Document ID - 15-SMCC-21843; Served To - ASSET ACCEPTANCE LLC; Server - ; Served Date - 16-DEC-15; Served Time - 10:30:00; Service Type - Special Process Server; Reason Description - Served

**12/22/2015**  ☐ **Summons Issued-Circuit**
   Document ID: 15-SMCC-22125, for BLITT & GAINES, P.C..
   ☐ **Summons Issued-Circuit**
   Document ID: 15-SMCC-22124, for UNDERWOOD, GARY R.

**12/14/2015**  ☐ **Summons Issued-Circuit**
   Document ID: 15-SMCC-21843, for ASSET ACCEPTANCE LLC.
   ☐ **Order - Special Process Server**

**12/11/2015**  ☐ **Filing Info Sheet eFiling**
      **Filed By:** BRYAN ETHAN BRODY
   ☐ **Motion Special Process Server**
   Plaintiff s Request for Appointment of Process Server for Defendants Blitt and Gaines, P.C. and Gary R. Underwood.
      **Filed By:** BRYAN ETHAN BRODY
      **On Behalf Of:** DONNA SMITH
   ☐ **Motion Special Process Server**

**EXHIBIT A**

☐

Plaintiff s Request for Appointment of Process Server for Defendant Asset Acceptance, LLC.
**Filed By:** BRYAN ETHAN BRODY

☐ **Class Action Filed**

Motion and Memorandum in Support of Class Certification.
**Filed By:** BRYAN ETHAN BRODY

☐ **Pet Filed in Circuit Ct**

Petition.
**Filed By:** BRYAN ETHAN BRODY

☐ **Judge Assigned**



# IN THE 22ND JUDICIAL CIRCUIT COURT OF CITY OF ST LOUIS, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>BRYAN L HETTENBACH | **Case Number: 1522-CC11281** | Process Server 1 |
| Plaintiff's/Petitioner:<br>DONNA SMITH | Plaintiff's/Petitioner's Attorney/Address<br>BRYAN ETHAN BRODY<br>1 NORTH TAYLOR AVE | Process Server 2 |
| vs. | ST LOUIS, MO 63108 | Process Server 2 |
| Defendant/Respondent:<br> ASSET ACCEPTANCE LLC | Court Address:<br>CIVIL COURTS BUILDING | |
| Nature of Suit:<br>CC Other Tort | 10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  ASSET ACCEPTANCE LLC
 Alias:

CSC-LAWYERS INCORPORATING
SERVICE COMPANY
221 BOLIVAR STREET
JEFFERSON CITY, MO 65101

**SPECIAL PROCESS SERVER**

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

*CITY OF ST LOUIS*

**DECEMBER 14, 2015**
Date

Thomas Kloeppinger
Circuit Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:**  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____ _____
Printed Name of Sheriff or Server   Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*   Subscribed and sworn to before me on _____ (date).

My commission expires: _____ _____
Date   Notary Public

| Sheriff's Fees, if applicable | | |
|---|---|---|
| Summons | $ _____ | |
| Non Est | $ _____ | |
| Mileage | $ _____ | ( _____ miles @ $ . _____ per mile) |
| Total | $ _____ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

# IN THE CIRCUIT COURT
## CITY OF ST. LOUIS
## STATE OF MISSOURI

| | | |
|---|---|---|
| **DONNA SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. |
| | ) | |
| **ASSET ACCEPTANCE, LLC,** | ) | Division |
| | ) | |
| Serve at: | ) | |
| CSC-Lawyers Incorporating Service Company | ) | |
| 221 Bolivar Street | ) | |
| Jefferson City, Missouri 65101 | ) | |
| | ) | |
| **BLITT & GAINES, P.C.,** | ) | |
| | ) | |
| Serve at: | ) | |
| C T Corporation System | ) | |
| 120 South Central Avenue | ) | |
| Clayton, Missouri 63105 | ) | |
| | ) | |
| **GARY R. UNDERWOOD,** | ) | |
| | ) | |
| Serve at: | ) | |
| 515 Olive Street, Suite 800 | ) | |
| St. Louis, Missouri 63101 | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## INTRA-STATE CLASS ACTION PETITION

COMES NOW, Plaintiff, Donna Smith, and for her Intra-State Class Action Petition, states as follows:

## JURISDICTION AND VENUE

1.     This is a putative class action for compensatory and punitive damages brought by individual consumers for Defendant Asset Acceptance, LLC, Blitt & Gaines, P.C., and Gary R.

1

Underwood's violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.* ("MMPA") and wrongful garnishment.

2.        This Court possesses jurisdiction over Plaintiff's state law claims because Defendant's directed their unfair and tortious activity at Plaintiff in the State of Missouri.

3.        Plaintiff was first injured by Defendant's garnishment activity while she was residing in the City of St. Louis.  Venue is thus proper in this Court.

4.        Plaintiff demands a trial by jury on all issues so triable.

## PARTIES

5.        Plaintiff is a natural person currently residing in the City of St. Louis, Missouri. Plaintiff is a citizen of the State of Missouri.

6.        Defendant Blitt & Gaines, P.C. ("Blitt & Gaines") is a foreign professional corporation with its principal place of business in Wheeling, Illinois.

7.        The principal business purpose of Defendant Blitt & Gaines is the collection of debts and Blitt & Gaines regularly attempts to collect debts alleged to be due another.

8.        Specifically, Blitt & Gaines works for an array of debt buyers and debt collectors, including but not limited to Asset Acceptance, LLC, and takes hundreds of default and consent judgments each year against Missouri citizens who owe consumer debts to such entities.

9.        Defendant Asset Acceptance, LLC ("Asset Acceptance") is a foreign limited liability company with its principal office in Warren, Michigan.

10.        The principal business purpose of Asset Acceptance is the collection of debts and Asset Acceptance regularly attempts to collect debts alleged to be due another.

2

11.     Specifically, Asset Acceptance purchases, *en masse*, large portfolios of defaulted debts and files thousands of debt collection lawsuits every year against Missouri citizens who owe consumer debts to such entities.

12.     Defendant Gary R. Underwood ("Underwood") is a citizen of the State of Missouri who resides and intends to stay indefinitely in Missouri.  Underwood is an attorney licensed in Missouri, bar number 22560.

13.     The principal business purpose of Defendant Underwood is the collection of debts in Missouri, and Underwood regularly attempts to collect debts alleged to be due another. Specifically, Underwood works for an array of creditors and collection agencies and takes hundreds of default and consent judgments each year against consumers who owe personal debts to such entities.  Underwood directly employs and/or supervises a staff of non-attorney debt collectors who send letters and make calls to consumers in Underwood's name to collect debts.

## FACTS

### *Asset Acceptance is the Principal; Blitt & Gaines and Underwood Are Its Agents*

14.     Asset Acceptance mass-files collection lawsuits against Missouri consumers in order to obtain payment on delinquent accounts.

15.     The vast majority of its collection suits end in a default or consent judgment since most consumers cannot afford to retain an attorney to defend against Asset Acceptance's claims.

16.     Within the garnishments it then files, Asset Acceptance attempts to collect hundreds of dollars in illicit post-judgment interest fees that are not in fact awarded by the judgment.

17.     Defendants Blitt & Gaines and Underwood are debt collection attorneys that Asset Acceptance uses to employ this unlawful collection scheme.

3

18.     According to court records, Defendants have jointly utilized this routine practice in hundreds of Missouri consumer collection cases within the past five years.

19.     Asset Acceptance has the right or power to control and direct the conduct and method of Blitt & Gaines and Gary Underwood in the performance of their debt collection duties and exercised that right and power with respect to the collection Plaintiff's alleged debt.

20.     The principal-agent relationship between Asset Acceptance and Defendant Blitt & Gaines and Defendant Underwood existed at all times relevant to Plaintiff's claims.

***Defendants Unlawfully Seize Funds from Plaintiff that are Not Awarded by the Court***

21.     On October 25, 2013, Defendant Underwood, on behalf of his client Asset Acceptance, filed a consumer debt collection lawsuit against Plaintiff in St. Louis County, Missouri Associate Circuit Court, cause number 13SL-AC34604.

22.     Therein, Underwood alleged that Asset Acceptance was assigned a defaulted account from Dell Financial Services with a total outstanding balance of $2,185.38.

23.     On December 4, 2013, the parties entered into a Consent Judgment.

24.     Defendant Underwood personally drafted and prepared the Judgment on behalf of Asset Acceptance.

25.     The parties agreed to a judgment amount of $2,798.61, which was comprised of the principal amount, pre-judgment interest, and attorney's fees.

26.     The parties agreed that the judgment would not include post-judgment interest and that the judgment was limited to the amount on the face of the consent judgment.

27.     Defendant Underwood and Asset Acceptance did not request the award of post-judgment interest within the Judgment.

4

28.     Under Missouri law, post-judgment interest is only recoverable if the judgment expressly awards such interest. Peterson v. Discover Prop. & Cas. Ins. Co., 460 S.W.3d 393, 413 (Mo. Ct. App. 2015) ("[E]ven though mandated by statute, the award of post-judgment interest must be included in the original judgment to which it applies or in a timely amendment to that judgment.") (citing McGuire v. Kenoma, LLC, 447 S.W.3d 659, 666–67 (Mo. banc 2014)).

29.     The Consent Judgment that the Honorable Lawrence Permuter, Jr. entered on December 4, 2013 was complete and expressed the intent of the parties as to the absence of post-judgment interest on the judgment amount.

30.     Defendant never sought an agreement with Plaintiff to amend the consent judgment to provide for the award of post-judgment interest.

31.     Pursuant to Missouri Supreme Court Rule 75.01, the deadline to file a motion to amend the judgment and request the Court to award post-judgment interest expired within thirty-days from the entry of the judgment, on or about January 23, 2014.

32.     As of January 23, 2014, Defendants had not filed a post-judgment motion requesting the inclusion of post-judgment interest to accrue on the judgment.

33.     As of the date of this Petition, no party has ever made a request for the inclusion of post-judgment interest to accrue on the judgment entered in Cause No. 13SL-AC34604.

34.     On August 11, 2014, Defendant Underwood filed an Execution/Garnishment/Sequestration Application in the collection case on behalf of Asset Acceptance, designated as 14-GARN-59615.

35.     Despite the fact that the judgment did not authorize post-judgment interest to be assessed, Defendants unilaterally included $242.88 in post-judgment interest that had purportedly accrued since Plaintiff defaulted on her payment schedule.

5

36.     Defendants attempted to garnish illicit post-judgment interest fees that the Court did not in fact award via the judgment.

37.     Upon information and belief, Defendants did not realize any monies from their August 11, 2014 unlawful garnishment request.

38.     On November 24, 2014, Defendants filed another Execution/Garnishment/ Sequestration Application in the collection case, designated as 14-GARN-6827.

39.     Despite the fact that the judgment did not authorize post-judgment interest to be assessed, Defendants unilaterally included $358.74 in post-judgment interest that had purportedly accrued since Plaintiff defaulted on her payment schedule.

40.     Defendants served their unlawful garnishment on Plaintiff's employer, BJC Healthcare.

41.     The November 24, 2014 garnishment possessed a payout date of March 16, 2015, during which time Defendants ultimately garnished $1,013.85 of Plaintiff's wages.

42.     On April 17, 2015, Defendants filed another Execution/Garnishment/ Sequestration Application in the collection case, designated as 15-GARN-26191.

43.     Despite the fact that the judgment did not authorize post-judgment interest to be assessed, Defendants unilaterally included $536.75 in post-judgment interest that had purportedly accrued since Plaintiff defaulted on her payment schedule.

44.     Defendants served their unlawful garnishment on Plaintiff's employer, BJC Healthcare.

45.     The April 17, 2015 garnishment possessed a payout date of July 27, 2015, during which time Defendants ultimately garnished $ 1,079.74 of Plaintiff's wages.

6

46.     On June 1, 2015, Defendant Underwood ceased operating his own law firm and became the managing partner of Blitt & Gaines' St. Louis office. Thereafter, all of Underwood's collection activity on behalf of Asset Acceptance was carried-out in accordance with Blitt & Gaines' express policies and instruction, including the collection of the judgment entered in Cause No. 13SL-AC34604.

47.     On August 26, 2015, Defendants filed another Execution/Garnishment/ Sequestration Application in the collection case, designated as 15-GARN-55471.

48.     Despite the fact that the judgment did not authorize post-judgment interest to be assessed, Defendants unilaterally included $587.14 in post-judgment interest that had purportedly accrued since Plaintiff defaulted on her payment schedule.

49.     Defendants served their unlawful garnishment on Plaintiff's employer, BJC Healthcare.

50.     Defendants' April 17, 2015 garnishment possesses a payout date of February 29, 2016.

51.     Defendants have thus far garnished $1,032.82 of Plaintiff's wages from its most recent garnishment.

52.     Defendants' garnishment (15-GARN-55471) is continuing to run.

53.     To date, Defendants have never returned any of the funds that they unlawfully seized from Plaintiff.

54.     Since Defendants were not awarded any post-judgment interest, its garnishment activity has resulted in an unlawful seizure of Plaintiff's monies in the amount of $587.14.

7

### *Defendants Are Garnishing an Unlawful Amount of Post-Judgment Interest*

55.     Not only did Defendants assess post-judgment interest fees that the Court did not award, the amount of interest Defendants assessed on the judgment was also unlawful.

56.     In Missouri, a creditor may only collect interest pursuant to contract or statute (Mo. Rev. Stat. § 408.020).

57.     According to the Affidavit that Defendants attached to the Petition in Case No. 13SL-AC34604, the original creditor – Dell Financial Services – charged-off the underlying account as a bad debt in 2012 and relinquished the right to assess the contractual rate of interest, if any.

58.     Even had Defendants properly obtained an award of post-judgment interest (they did not), Defendants would only be legally permitted to collect interest at the statutory rate of nine percent (9%).

59.     A comparison of the amount of interest Defendants included within their garnishment requests reveals that Defendants sought – and ultimately seized – hundreds of dollars in excess of the amount permitted by law, even had they been awarded post-judgment interest.

60.     Based on the amounts included within their garnishment requests, Defendants are necessarily employing one of the following unlawful practices: (1) Defendants are assessing a rate of interest that exceeds the statutory rate of nine percent or (2) Defendants are assessing nine percent interest but are unlawfully calculating interest as follows:

> (a)     Back-dating the accrual of post-judgment interest from the date of judgment, in contravention of the stay of execution;

8

(b)  Adding court costs to the principal amount of the judgment upon which post-judgment interest is being assessed even though the clerk of the court has not yet entered a bill of costs awarding court costs;

(c)  Including the presumptive amount of post-judgment interest fees that would be due on the last day of the term of the garnishment rather than the day the garnishment was filed; and

(d)  Failing to credit any of the prior post-judgment payments on the judgment amount before re-assessing post-judgment interest within their subsequent garnishment requests.

61.  Due to Defendants' failure to obtain an award of post-judgment interest on the face of the judgment, Plaintiff does not know whether Defendant is unlawfully assessing the contact rate of interest on a charged-off debt or whether Defendant is unilaterally and extra-judicially awarding itself the post-judgment statutory interest through an unlawful calculation.

62.  This confusion underscores the reasons parties are obligated to obtain an award of post-judgment interest on the face of their judgment.

### *Defendants Are Unlawfully Assessing a Rate of Post-Judgment Interest That Exceeds Nine Percent*

63.  According to the terms of the Consent Judgment that parties agreed to on December 4, 2013, Defendants were obligated to stay execution of the judgment upon Plaintiff's payment of $20 per month beginning December 15, 2013.

64.  Plaintiff timely remitted payment for two of her monthly payments through the month of February, 2014.

9

65.     The first date Plaintiff defaulted on full payment of the judgment payment schedule was February 15, 2014.  Execution of the judgment and corresponding accrual of interest would have been stayed until February 15, 2014 at the very earliest.

66.     By the time Defendants filed their first garnishment request on August 11, 2014, Plaintiff had already made voluntary payments on her account totaling $50.00.

67.     As of August 11, 2014, the remaining amount of the judgment was $2,748.61.

68.     At a rate of nine percent, the amount of interest that would have accrued on a judgment amount of $2,748.61 from February 15, 2014 to August 11, 2014 is $119.96.

69.     Defendants unlawfully attempted to garnish over twice that amount: $242.88.

70.     Defendants' practice of assessing post-judgment interest at an unlawful rate of interest remained consistent throughout each of its garnishment requests.

71.     Within its second garnishment request, Defendants represented that they were entitled to post-judgment interest fees in the amount of $358.74 as of November 24, 2014.

72.     This was false.

73.     Had Defendants assessed nine percent interest on the full judgment balance of $2,798.61 from the date of default, February 15, 2014, to the date of their second garnishment request, November 24, 2014, only $245.66 in post-judgment interest would have accrued.

74.     Within their third garnishment request, Defendants represented that they were entitled to post-judgment interest fees in the amount of $536.75 as of April 17, 2015.

75.     This was false.

76.     Had Defendants assessed nine percent interest on the full judgment balance of $2,798.61 from the date of default, February 15, 2014, to the date of their third garnishment request, April 17, 2015, only $345.03 in post-judgment interest would have accrued.

10

77. Even if Defendants assessed nine percent interest on the full judgment balance plus court costs from the date of judgment, December 4, 2013, through the requested return date ninety days after April 17, 2015, only $427.72 in post-judgment interest would have accrued.

78. Within their fourth garnishment request, Defendants represented that they were entitled to post-judgment interest fees in the amount of $587.14 as of August 26, 2015.

79. This was false.

80. Had Defendants assessed nine percent interest on the full judgment balance of $2,798.61 from the date of default, February 15, 2014, to the date of their fourth garnishment request, August 26, 2015, only $435.43 in post-judgment interest would have accrued.

81. Even if Defendants assessed nine percent interest on the full judgment balance plus court costs from the date of judgment, December 4, 2013, through the requested return date one hundred eighty days after August 26, 2015, less than $587.14 in post-judgment interest would have accrued.

### In The Alternative, Defendants Are (1) Back-Dating Interest; (2) Prematurely Awarding Themselves Court Costs; (3) Calculating Prospective Interest Due; (4) Failing to Credit Post-Judgment Payments Before Assessing Interest; and (5) Assessing Interest Upon Interest

82. The *only* way Defendants would be able to justify the amount of post-judgment interest that they garnished (other than assessing a rate of interest greater than 9%) is if they employed a litany of unlawful practices.

83. First, Defendants began assessing interest immediately on the date of the judgment, December 4, 2013, in contravention of the stay of execution that the parties agreed to.

84. Second, Defendants included court costs of approximately $100 on the judgment amount. The clerk of the court, however, did not yet enter a bill of costs that would otherwise permit Defendants to recover such costs and/or use court costs within their post-judgment

11

interest calculation. Under Missouri law, no costs may be assessed in favor of a prevailing party under Missouri Supreme Court Rule 77.01 until the circuit clerk taxes a bill of costs.

85.     Third, Defendants prospectively included hundreds of dollars of interest that presumably would have accrued by the last day of the garnishment term but which did not yet exist as of the date of the garnishment application.

86.     Defendants' procedure of calculating future interest was unlawful; it presupposed the principal amount of the judgment would remain the same throughout the life of the garnishment. However, the initial judgment balance that Defendants used to prospectively calculate post-judgment interest changed during the term of the garnishment due to wages Defendants garnished in the interim. The interest figure that Defendants included in their garnishment application (which contemplated a static judgment amount through the end of the garnishment) was therefore false.

87.     Fourth, Defendants failed to credit the post-judgment payments to the judgment amount before re-calculating the post-judgment interest within each subsequent garnishment request.

88.     Fifth, rather than subtracting post-judgment payments from the original judgment amount before re-calculating interest, Defendants were actually adding to the original judgment amount over time. Specifically, Defendants were compounding interest. A comparison of Defendants' first and last garnishment requests reveals that the post-judgment balance was increasing at a higher rate over time even though the judgment balance was decreasing and should have thereby caused the corresponding the rate at which post-judgment interest was accumulating to decrease as well.

12

89.     Taken together, Defendants' combined practice resulted in Defendants garnishing from Plaintiff hundreds of dollars more than Defendants were legally authorized to recover, even assuming they properly obtained an awarded of post-judgment interest.

## CLASS ALLEGATIONS

90.     It is Defendants' routine practice to filed garnishment requests in consumer collection suits that include post-judgment interest when such interest was not awarded via the judgment.

91.     This action is properly maintainable as a class action pursuant to Rule 52.08 of the Missouri Supreme Court Rules.  The classes consist of the following persons:

    a.  The "MMPA class": All persons Defendants have on record as owing a consumer debt where (1) Defendant filed a garnishment within the past five years that sought post-judgment interest; (2) the judgment was entered in a Missouri court; (3) Defendants obtained money from the garnishment; and (4) the judgment did not expressly award post-judgment interest.

    b.  The "Wrongful Garnishment class": All persons Defendants have on record as owing a consumer debt where (1) Defendants filed a garnishment within the past five years that sought post-judgment interest; (2) the judgment was entered in a Missouri court; (3) Defendants obtained money from the garnishment; (4) Defendants knew the judgment did not expressly award post-judgment interest; and (5) Defendants intended to cause injury by garnishing an amount not awarded in the judgment.

13

92.     Members of the classes are so numerous that joinder is impracticable. Based on Plaintiff's research of complaints from other consumers, Asset Acceptance is a high-volume debt buyer that attempts to collect hundreds of debts in Missouri on behalf of creditors. Blitt & Gaines and Gary Underwood are collection attorneys who have each issued hundreds garnishments against Missouri consumers within the past 5 years alone.

93.     Upon information and belief, Defendants have each engaged in the improper unfair business practice and tortious conduct described above with at least one hundred Missouri consumers.

94.     Plaintiff is a member of the classes she seeks to represent.

95.     There are no unique defenses Defendants can assert against Plaintiff individually, as distinguished from the class.

96.     Plaintiff will assure the adequate representation of all members of the class and will have no conflict with class members in the maintenance of this action. Plaintiff's interests in this action are typical of the class and are antagonistic to the interests of Defendants. Plaintiff has no interest or relationship with Defendants that would prevent her from litigating this matter fully. Plaintiff is aware that settlement of a class action is subject to court approval and she will vigorously pursue the class claims throughout the course of this action.

97.     A class action will provide a fair and efficient method to adjudicate this controversy since the claims of the class members are virtually identical in that they raise the same questions of law and involve the same methods of garnishing by Defendants.

98.     Most, if not all, of the facts needed to determine liability and damages are obtainable from publically-available court records.

99.     The purposes of the Missouri state law will be best effectuated by a class action.

14

100.   A class action is superior to other methods for the fair and efficient adjudication of this controversy.

101.   Furthermore, as damages suffered by most members of the class are relatively small in relation to the costs, expense, and burden of litigation, it would be difficult for members of the class individually to redress the wrongs done to them.

102.   Many, if not all, class members are unaware that claims exist against Defendants. There will be no unusual difficulty in the management of this action as a class action.

103.   Four common questions of law and fact predominate over all individual questions of the MMPA class.  The common questions are whether: (1) Defendants filed a garnishment within the past five years that sought post-judgment interest; (2) the judgment was entered in a Missouri court; (3) the judgment did not expressly award post-judgment interest; and (4) Defendants obtained money from the garnishment.

104.   Five common questions of law and fact predominate over all individual questions of the Wrongful Garnishment class.  The common questions are whether: (1) Defendants filed a garnishment within the past five years that sought post-judgment interest; (2) the judgment was entered in a Missouri court; (3) Defendants knew that the judgment did not award post-judgment interest; (4) Defendants obtained money from the garnishment; and (5) Defendants intended to cause injury by garnishing an amount not awarded in the judgment.

105.   Because many class members are unaware of their claims and because their claims are small in relation to the cost of an individual suit, a class action is the only proceeding in which class members can, as a practical matter, recover.

15

106.    Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action.  Plaintiff's counsel will fairly and adequately represent and protect the interests of the class.

107.    All class members have been damaged in precisely the same fashion, by precisely the same conduct.  The loss suffered by individual class members is calculable and ascertainable.

**COUNT I: VIOLATION OF THE MISSOURI
MERCHANDISING PRACTICES ACT – ALL DEFENDANTS**

108.    Plaintiff incorporates all prior paragraphs as if fully stated herein.

109.    The MMPA broadly prohibits any false, fraudulent, or deceptive practice in connection with the "sale" of "merchandise."

110.    Plaintiff is a "person" within the meaning of the MMPA, RSMo. § 407.010(5).

111.    Defendants are each a "person" within the meaning of the MMPA, RSMo. § 407.010(5).

112.    Plaintiff's line of credit she received from Dell Financial occurred in connection with a "sale" as defined by § 407.010(6) and § 407.020.

113.    The "sale" was primarily for personal, family, or household purposes.

114.    The sale between Dell Financial (and its subsequent assignee Asset Acceptance) and Plaintiff created a relationship that applied to the performance of duties related to the sale, including Defendants' collection of unpaid payments arising out of the sale.

115.    In an attempt to obtain payment, Defendants used deception, false pretenses, false promises, misrepresentation, factual omissions and unfair business practices when they garnished funds from Plaintiff that she did not owe and which were not awarded by the judgment.

116.    The judgment against Plaintiff did not provide for the recovery of post-judgment interest.

117.    Defendants personally drafted the judgment and had access to the judgment at all times relevant to their garnishment activity.

118.    Defendants knew that the judgment did not award post-judgment interest.

119.    Notwithstanding, Defendants caused knowingly false garnishments to be issued which included illicit amounts of post-judgment interest.

120.    Even had Defendants obtained an award of post-judgment interest, they ultimately garnished Plaintiff's wages that exceeded the permissible statutory amount by hundreds of dollars.

121.    Defendants' actions were therefore wanton, willful, and in deliberate disregard of Plaintiff's rights thereby justifying the imposition of punitive damages.

122.    The garnishment resulted in an unlawful seizure of Plaintiff's monies at least in the amount of $24.32.

123.    Defendants' misrepresentation and/or concealment caused Plaintiff an ascertainable loss, including the difference between the amount which Plaintiff may have properly owed and the amount Defendants actually collected via their garnishment.

WHEREFORE, Plaintiff respectfully requests that the Court certify the proposed class, that that the Court appoint Plaintiff as class representative and the undersigned as class counsel, and that judgment be entered against Defendants for:

A.      Actual damages in an amount greater than the minimum jurisdictional amount of this Court to be determined at trial;

17

B.    Punitive damages pursuant to Mo. Rev. Stat. § 407.025(1) in the largest amount allowed by law;

C.    Reasonable attorney's fees pursuant to Mo. Rev. Stat. § 407.025(1); and

D.    For such other and further relief as the Court deems proper.

## COUNT II: WRONGFUL GARNISHMENT – ALL DEFENDANTS

124.    Plaintiff re-alleges and incorporates by reference all of the above paragraphs.

125.    Defendants have abused and/or misused Missouri Rule 90 and/or Chapter 525 R.S.Mo. pertaining to garnishments.

126.    Defendants intentionally caused a garnishment to be served upon Plaintiff that sought an amount that Defendants knew Plaintiff did not owe, namely post-judgment interest and an amount of post-judgment interest that was not otherwise permitted under Missouri law.

127.    Defendants' unauthorized garnishment has resulted in Plaintiff's hard-earned wages being seized.

128.    Plaintiff's wages funds are her property.

129.    Defendants intended to cause injury to Plaintiff, namely, garnishing her wages and applying those funds to pay amounts she did not owe.

130.    Defendants had no justification or authority for garnishing any amount of post-judgment interest, much less the hundreds of dollars Defendants sought over and above the amount permitted by Missouri's statutory rate of interest.

131.    Defendants knew that the parties did not agree to the accrual of post-judgment interest within the consent judgment they signed.

18

132.    Defendants knew that they could not back-date interest, collect interest on court costs that were not yet awarded, prospectively calculate interest based on the end-date of the garnishment, refuse to credit payments before recalculating interest, and/or compound interest. Defendants nevertheless engaged in each and every one of these unlawful practices.

133.    Defendants' conduct was thus knowing, willful, and intentional justifying the imposition of punitive damages.

134.    Defendants' conduct cased Plaintiff to sustain damages, including but not limited to monetary loss, the loss of use of her funds, embarrassment, stress, and anxiety.

WHEREFORE, Plaintiff respectfully requests that the Court certify the proposed class, that that the Court appoint Plaintiff as class representative and the undersigned as class counsel, and that judgment be entered against Defendants for:

A.    Actual damages in an amount to be determined at trial;

B.    Punitive damages in the largest amount allowable by law; and

C.    For such other and further relief as the Court deems proper.

**VOYTAS & COMPANY**

/s/ Bryan E. Brody

Bryan E. Brody, #57580
Bryan.e.brody@gmail.com
Alexander J. Cornwell, #64793
alexanderjcornwell@gmail.com
1 North Taylor Avenue
St. Louis, Missouri 63108
Phone: (314) 932-1068

19

IN THE CIRCUIT COURT
CITY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| **DONNA SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. |
| | ) | |
| **ASSET ACCEPTANCE, LLC,** | ) | Division |
| | ) | |
| and | ) | |
| | ) | |
| **BLITT & GAINES, P.C.,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **GARY R. UNDERWOOD,** | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

**MOTION AND MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION**

**I.    Introduction**

Plaintiff Donna Smith moves for an order certifying this lawsuit as a class action against Defendants Asset Acceptance, LLC, Blitt & Gaines, P.C., and Gary R. Underwood.  Plaintiff and her counsel have uncovered a widespread practice that Defendants utilize when collecting consumer debts.  Specifically, Defendants have each issued hundreds of garnishments that include illicit post-judgment interest fees that are not in fact awarded by the Court within the default or consent judgment.  This issue is ready for certification, as all of the information necessary for certifying the class is publically-available and immediately accessible.  According to court records, of which this Court can take judicial notice, Defendants have engaged in this violative and uniform practice on over one-hundred occasions within the past five years.  For the reasons outlined below, Plaintiff moves the Court to certify the following classes:

1

a.   The "MMPA class": All persons Defendants have on record as owing a consumer debt where (1) Defendants filed a garnishment within the past five years that sought post-judgment interest; (2) the judgment was entered in a Missouri court; (3) Defendants obtained money from the garnishment; and (4) the judgment did not expressly award post-judgment interest.

b.   The "Wrongful Garnishment class": All persons Defendants have on record as owing a consumer debt where (1) Defendants filed a garnishment within the past five years that sought post-judgment interest; (2) the judgment was entered in a Missouri court; (3) Defendants obtained money from the garnishment; (4) Defendants knew the judgment did not expressly award post-judgment interest; and (5) Defendants intended to cause injury by garnishing an amount not awarded in the judgment.

## II.   <u>Standard for Class Certification.</u>

"A class action is designed to promote judicial economy by permitting the litigation of the common questions of law and fact of numerous individuals in a single proceeding." *Craft v. Philip Morris Companies, Inc.*, 190 S.W.3d 368, 378 (Mo. App. E.D. 2005). Because it is a procedural tool, "courts do not conduct an inquiry into the merits of the lawsuit when class certification is at issue." *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 222 (Mo. App. W.D. 2007). Rather, "the sole issue is whether plaintiff has met the requirements for a class action." *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 715 (Mo. banc 2007). The determination of whether to certify a class action under Rule 52.08 rests within the sound discretion of the trial court, and courts should ultimately "err in favor of, and not against, certifying a class." *Doyle v. Fluor Corp.*, 199 S.W.3d 784, 788 (Mo. App. E.D. 2006).

2

## III.   Application of Rule 52.08

"Rule 52.08 governs the procedure for certifying a class action.   There are four prerequisites to class certification: 1) the class must be so numerous that joinder of all members is impracticable; 2) there must be questions of law or fact common to the class; 3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and 4) the representative parties must be able to fairly and adequately protect the class' interest. Rule 52.08(a)." *Id.*  Additionally, one of the three facts set forth in Rule 52.08(b) must also be present, including that "questions of law or fact common to the class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the matter." *Id.*.  In its application, Rule 52.08(b)(3) is equivalent to Federal Rule of Civil Procedure 23.  <u>Dale v. DaimlerChrysler Corp.</u>, 204 S.W.3d 151, 161 (Mo. Ct. App. 2006); <u>Coleman v. Watt</u>, 40 F.3d 255, 258–259 (8th Cir. 1994).

### A.   Numerosity

Plaintiff has yet to engage in class discovery.   However, Missouri court records demonstrate that Defendants have unlawfully garnished post-judgment interest where such interest was not awarded in over one-hundred cases.  Accordingly, the proposed class includes at least 100 members.

Because it would be impracticable to join hundreds of individuals who are potential class members based on information Plaintiff expects to discover, the proposed class will meet the numerosity requirement. Indeed, "a class of forty is generally sufficient to satisfy Rule 23(a)(1)." <u>Hinman v. M and M Rental Center, Inc.</u>, 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008) (quoting <u>McCabe v. Crawford & Co.</u>, 210 F.R.D. 631, 642 (N.D. Ill. 2002) (internal citations omitted));

3

*see* Patrykus v. Gomilla, 121 F.R.D. 357, 360-61 (N.D. Ill. 1988) ("The court is entitled to make common sense assumptions in order to support a finding of numerosity.").

### B.    Commonality

Rule 52.08(a)(2) requires that there be questions of law or fact common to the class. Keele v. Wexler, 149 F.3d 589, 595 (7th Cir. 1998) (common questions of fact are typically found when the Defendants has engaged in standardized conduct towards the members of the proposed class); Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)"); DeBoer v. Mellon Mortg. Co, 64 F.3d 1171, 1174 (8th Cir. 1995) ("Commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'"). Here, Plaintiff will establish that Defendants engaged in standardized conduct towards the members of the proposed class by garnishing funds and applying those monies to pay down non-existent post-judgment interest fees.

The common legal questions facing the MMPA class members are whether (1) Defendants filed a garnishment within the past five years that sought post-judgment interest; (2) the judgment was entered in a Missouri court; (3) Defendants obtained money from the garnishment; and (4) the judgment did not expressly award post-judgment interest. The common legal questions facing the Wrongful Garnishment class are whether (1) Defendants filed a garnishment within the past five years that sought post-judgment interest; (2) the judgment was entered in a Missouri court; (3) Defendants obtained money from the garnishment; (4) Defendants knew the judgment did not expressly award post-judgment interest; and (5) Defendants intended to cause injury by garnishing an amount not awarded in the judgment.

4

### C.     Typicality

Typicality under Rule 52.08(a)(3) is "fairly easily met" and requires only that "other class members have claims similar to the named plaintiff." DeBoer, 64 F.3d at 1774; De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."); *see also* Hinman, 545 F. Supp. 2d at 806–07 ("[C]ommonality and typicality are generally met where, as here, a Defendant engages in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct.").

Here, Plaintiff's claims are *identical* to those of every member of the putative class; namely, that Defendants engaged in identical, or nearly identical, conduct by issuing garnishments for post-judgment interest fees that were not awarded in any of the default or consent judgments against the class members.

### D.     Adequacy of Representation

Rule 52.08(a)(4) requires that the proposed class representative and class counsel fairly and adequately protect the interests of the class. This has two components: "(1) the plaintiff's attorney must be qualified, experienced and generally able to conduct the litigation; and (2) the class representative must not have claims antagonistic to or conflicting with those of other class members." G.M. Sign, Inc. v. Finish Thompson, Inc., No. 07 C 5953, 2009 WL 2581324, at *6 (N.D. Ill. Aug. 20, 2009). Plaintiff satisfies these requirements.

Plaintiff has retained experienced counsel, as the undersigned Firm has handled numerous MMPA and Wrongful Garnishment cases and also has experience in class litigation. Plaintiff also understands the nature of her claims and her responsibilities as class representative.

Plaintiff will have no conflict with the interests of the class. Plaintiff and the absent class members all seek damages under the same legal theory and facts for Defendants' routine violations of Missouri state law. Plaintiff will provide more detailed information on the adequacy requirement after discovery is complete and she is ready to supplement this Motion.

### E. Predominance

Rule 52.08(b) requires that the questions of law or fact common to the class predominate over questions affecting only individual members. Jones v. CBE Grp., Inc., 215 F.R.D. 558, 569 (D. Minn. 2003) (citing Fed. R. Civ. P. 23(b)(3)); Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996) (Rule 23(b)(3) analysis "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class."). Predominance requires that "common questions concerning a significant aspect of a case can be resolved in a single action." Jones, 215 F.R.D. at 569. The inquiry focuses primarily on common questions regarding liability. Id.

The predominant issue among all class members the class is whether Defendants garnished and/or attempted to garnish funds for alleged post-judgment interest fees when such interest was not awarded by the court judgment creating the debt. These are common questions. There is no individualized finding necessary to prove or disprove class members' claims. Id.; Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005) ("If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.").

Finally, the membership of the class is identifiable and the calculation of damages is straightforward. *See* Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006). Under the MMPA and Wrongful Garnishment claims, any actual damages will be readily determinable as the amount garnished and being assessed towards post-judgment interest are matters of

6

publically-available court records. As a result, class membership should be readily ascertainable. Mitchem v. Ill. Collection Serv., Inc., No. 09 C 7274, 2010 WL 3003990, at *5 (N.D. Ill. July 29, 2010) ("Because Defendant is capable of compiling a list of debtors who did not, under plaintiff's theory, consent to its calls, an appropriately tailored class definition could make consent a class-wide, not an individual, issue.").

### F.   Superiority of Class Action

There is no better method available for the adjudication of the claims of these putative class members than a class action. Crawford v. Equifax Payment Serv., Inc., 201 F.3d 877, 880 (7th Cir. 2000) ("Because these [cases] are small-stakes cases, a class suit is the best, and perhaps the only, way to proceed"); Jackson v. Nat'l Action Fin. Servs., Inc., 227 F.R.D. 284, 290 (N.D. Ill. 2005) ("A class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually").

The alternate possibility of thousands of individual lawsuits is not a practical one. As stated by the Seventh Circuit, "[t]he more claimants there are, the more likely a class action is to yield substantial economies in litigation." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004). Furthermore, the membership of the putative class is easily identifiable because of the records and data that Defendants routinely maintain. Mitchem, 2010 WL 3003990, at *5. Thus, if this case were certified as a class action, it would not pose any unusual or difficult administrative problems. This is an ideal case for class certification.

### CONCLUSION

Because the proposed class meets the requirements of Rule 52.08, Plaintiff moves that the Court certify the proposed MMPA and Wrongful Garnishment classes, appoint Voytas & Company as class counsel, and appoint Plaintiff class representative.

**VOYTAS & COMPANY**

/s/ Bryan E. Brody

_____

Bryan E. Brody, #57580
Bryan.e.brody@gmail.com
Alexander J. Cornwell, #64793
alexanderjcornwell@gmail.com
1 North Taylor Avenue
St. Louis, Missouri 63108
Phone: (314) 932-1068

8